<pre>
 1            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
 2                    HARRISBURG DIVISION

 3   UNITED STATES OF AMERICA,        ) CASE NO.
                      Plaintiff       ) 1:18-CR-00228-SHR/MCC
 4            vs.                     )
     BRIAN SALVADO,                   )
 5                    Defendant       )
     _____)
 6

 7           TRANSCRIPT OF CHANGE OF PLEA HEARING
          BEFORE THE HONORABLE MARTIN C. CARLSON
 8             UNITED STATES MAGISTRATE JUDGE
               13 FEBRUARY 2020 - 9:28 A.M.
 9

10   APPEARANCES:

11   For the Government:

12       James T. Clancy, Esq., AUSA
         U.S. Attorney's Office
13       Federal Building, 2nd Floor
         228 Walnut Street
14       Harrisburg, PA 17108
         (717) 221-4482
15

16   For the Defendant:

17       Ari D. Weitzman, Esq., AFPD
         Federal Public Defender's Office
18       100 Chestnut Street, Suite 306
         Harrisburg, PA 17101
19       (717) 782-2237

20   Court Reporter:

21       Wesley J. Armstrong, RMR
         Official Court Reporter
22       U.S. Courthouse & Federal Building
         228 Walnut Street
23       Harrisburg, PA 17101
         (717) 542-5569

24

25       Proceedings recorded by machine shorthand; transcript
     produced by computer aided transcription.
</pre>

U.S. District Court, Middle District of PA

**P R O C E E D I N G S**

1

2          THE COURT: Good morning, Mr. Clancy.

3          MR. CLANCY: Good morning, Your Honor.

4          THE COURT: And good morning, Mr. Weitzman.

09:28AM   5          MR. WEITZMAN: Good morning, Your Honor.

6          THE COURT: And good morning, Mr. Salvado.

7          THE DEFENDANT: Good morning, Your Honor.

8          THE COURT: The next matter before the court this

9   morning is the case of United States of America versus Brian

09:28AM  10   Salvado.  It is this court's criminal number 18-228.  And,

11   Mr. Salvado, you come before me today because I understand

12   there's a plea agreement in this case, and it's your intention

13   to enter a guilty plea to Count 1 of the indictment.

14          THE DEFENDANT: Correct.

09:28AM  15          THE COURT: Well, that's good then.  You and I have

16   the same understanding of what we're doing here today.

17          THE DEFENDANT: Right.

18          THE COURT: Mr. Salvado, this case is assigned to

19   Judge Rambo, but Judge Rambo asked me to spend a little time

09:29AM  20   with you today discussing your rights in connection with this

21   plea, discussing the consequences of a plea, and making sure

22   that yours is a voluntary plea, supported by an independent

23   basis in fact.

24          Now, for me to do that I'll need to ask you a number

09:29AM  25   of questions, but because I am not the judge who will be

sentencing you, that will be Judge Rambo, before I can ask you
these questions you would have to authorize me to pose these
questions to you.  You would have to give me permission to do
that.

09:29AM         THE DEFENDANT: I give you permission.

        THE COURT: Well, I appreciate that, Mr. Salvado.
Now, Mr. Salvado, in a moment I'll have you placed under oath.

        THE DEFENDANT: Okay.

        THE COURT: And you should understand that if you gave
09:29AM  me a deliberate false answer under oath, you could be
prosecuted for perjury.  Do you understand that?

        THE DEFENDANT: I do understand.

        THE COURT: Furthermore, because your answers to these
questions are so important, if I ask you a question and you
09:30AM  don't understand my question, ask me to repeat it.  Okay?

        THE DEFENDANT: Will do.

        THE COURT: And if I ask you a question and you think
to yourself "I would like to discuss that question with
Mr. Weitzman," just let me know.

09:30AM         THE DEFENDANT: Okay.

        THE COURT: We'll give you all the time you need.
Okay?

        THE DEFENDANT: I appreciate it.

        THE COURT: Mr. Armbruster, will you administer the
09:30AM  oath?

|  |  |
|---|---|
| 1 | (The defendant was sworn by the courtroom deputy.) |
| 2 | EXAMINATION BY THE COURT: |
| 3 | **Q.** Could you state your name, please, sir? |
| 4 | **A.** Brian Salvado. |
| 09:30AM 5 | **Q.** How old are you, sir? |
| 6 | **A.** Forty-six. |
| 7 | **Q.** How far did you go in school? |
| 8 | **A.** I completed high school. |
| 9 | **Q.** Very good.  I take it then you read, write, and converse |
| 09:30AM 10 | in English? |
| 11 | **A.** Yes. |
| 12 | **Q.** Have you ever been treated for any form of mental illness |
| 13 | or drug or alcohol addiction? |
| 14 | **A.** No. |
| 09:30AM 15 | **Q.** And have you had any drugs or alcohol before coming here |
| 16 | today? |
| 17 | **A.** No. |
| 18 | **Q.** Are you taking any prescription medication that affects |
| 19 | your understanding of what we're doing today? |
| 09:30AM 20 | **A.** I don't think so. |
| 21 | **Q.** Okay. Well, are you taking some prescription? |
| 22 | **A.** I'm taking prescription drugs.  It's Remeron, and I take |
| 23 | Prozac. |
| 24 | **Q.** Okay. |
| 09:31AM 25 | **A.** And the Remeron is helping me sleep better at night. |

1  **Q.**   Okay.

2  **A.**   And the Prozac helps me more relax --

3  **Q.**   In terms of dealing with anxiety?

4  **A.**   Exactly.

09:31AM  5  **Q.**   With respect to those medications, do they affect your

6  understanding of what we're doing here today?

7  **A.**   No.

8        THE COURT: Mr. Weitzman, you've had ample opportunity

9  to meet with your client.  Is there anything about the

09:31AM  10  medications that he's been taking that in your estimation

11  affects his understanding of what we're doing today?

12        MR. WEITZMAN: No, Your Honor.

13        BY THE COURT:

14  **Q.**   And it's clear to me, Mr. Salvado, as I chat with you here

09:31AM  15  today that you've got a clear understanding of what we're doing

16  here today.

17  **A.**   I do.

18  **Q.**   Very well.  Very well.  And do you understand that today

19  is the date set for an entry of a guilty plea in this case?

09:31AM  20  **A.**   Yes.

21  **Q.**   And taking that into account and considering all things

22  together, are you feeling okay today?

23  **A.**   Just tired, but I'm feeling good.

24  **Q.**   And I understand that it could be a tiring day, but other

09:31AM  25  than that --

1 **A.**     I feel confident.

2 **Q.**     Good, good.  You've been represented, Mr. Salvado, by

3 Mr. Weitzman, who is well known to the court. So far are you

4 satisfied with the representation you have received?

09:32AM 5 **A.**     Very much.

6 **Q.**     And I would expect nothing else, but I'm always obliged to

7 check and make sure.

8 **A.**     No problem.

9 **Q.**     Very well.  Now, Mr. Salvado, by pleading guilty to Count

09:32AM 10 1 of the indictment you will be forever giving up your trial

11 rights, and because those are important rights I want to take a

12 moment or two to go over the nature of those rights with you so

13 you and I understand what it is you've decided to give up.

14 Okay?

09:32AM 15 **A.**     Okay.

16 **Q.**     You're entitled to a jury trial in this case, Mr. Salvado,

17 and at a jury trial you, through counsel, would help select the

18 twelve jurors who would hear the case.  Do you understand that?

19 **A.**     Yes.

09:32AM 20 **Q.**     At a jury trial you would be presumed innocent and you

21 could not be found guilty unless or until the government

22 established your guilt beyond a reasonable doubt. Do you

23 understand that?

24 **A.**     I do.

09:32AM 25 **Q.**     And to do that the government would have to establish your

1 guilt beyond a reasonable doubt on each and every element of

2 the offense charged against you.  Do you understand that?

3 **A.**   Yes, sir.

4 **Q.**   Furthermore, the government would have to carry that

09:33AM 5 burden of proof to the satisfaction of all twelve jurors.  A

6 verdict would have to be unanimous. Do you understand that?

7 **A.**   I do.

8 **Q.**   And do you further understand in a trial setting you could

9 file pretrial motions challenging the government's charges or

09:33AM 10 seeking to suppress evidence or seeking other relief?  Do you

11 understand that?

12 **A.**   I do.

13 **Q.**   Furthermore, at a trial you, through your counsel, could

14 cross examine government witnesses and challenge government

09:33AM 15 evidence.  Do you understand that?

16 **A.**   I do.

17 **Q.**   You could also at trial subpoena witnesses and evidence on

18 your own behalf and present them here in court. Do you

19 understand that?

09:33AM 20 **A.**   Yes, sir.

21 **Q.**   Furthermore, in a trial setting you could testify on your

22 own behalf, providing your account of what happened here,

23 although you could never be required to testify, and if you

24 chose not to testify your silence could never be held against

09:33AM 25 you.  Do you understand that?

1 **A.** I do.

2 **Q.** Do you understand that by pleading guilty you'll be giving

3 up all of these trial rights that we've just discussed and your

4 guilt will be established by what you say here today?

09:34AM 5 **A.** Yes, sir.

6    THE COURT: Now, there is a plea agreement in this

7 matter, and do you all have a copy of that plea agreement in

8 front of you?

9    MR. WEITZMAN: We do, Your Honor.

09:34AM 10    THE COURT: Excellent.

11    BY THE COURT:

12 **Q.** Could I ask you, Mr. Salvado, to take a look at the last

13 page of the plea agreement, page 30?  There's a heading there

14 that says *Acknowledgement*, and it reads, "I have read this

09:34AM 15 agreement and carefully reviewed every part of it with my

16 attorney.  I fully understand it and I voluntarily agree to

17 it."  Then there's a signature.  Whose signature is that?

18 **A.** That would be mine.

19 **Q.** And did you in fact read the agreement and carefully

09:34AM 20 review it before you signed it?

21 **A.** Yes, sir.

22 **Q.** Did you feel like you had enough time to go over the plea

23 agreement before you signed it?

24 **A.** I did.

09:34AM 25 **Q.** And did Mr. Weitzman answer any questions you had about

1    the agreement?

2    **A.**    He did.

3    **Q.**    And did you then voluntarily sign the agreement?

4    **A.**    Yes.

09:34AM    5    **Q.**    I'm going to ask Mr. Clancy to summarize for us the plea

6    agreement, and I'm going to ask you and Mr. Weitzman to pay

7    close attention, because when he gets done I'm going to ask if

8    he clearly summarized the agreement you have with the

9    government.

09:35AM    10    **A.**    Okay.

11    MR. CLANCY: Your Honor, the plea agreement in this

12    case provides that the defendant will plead guilty to Count 1

13    of the indictment.  That count charges him with use of a minor

14    to produce child pornography, in violation of Title 18, United

09:35AM    15    States Code, Sections 2251(a) and (e).

16    The maximum penalty upon conviction for that offense

17    is thirty years in prison, a $250,000 fine, a period of

18    supervised release up to life following any term of

19    incarceration, costs of prosecution, denial of certain federal

09:35AM    20    benefits, and a special assessment of $100.

21    That count does carry a mandatory minimum fifteen

22    year prison term.  In addition to pleading guilty the defendant

23    agrees in paragraph 12 of the plea agreement to acknowledge

24    that there are additional victims of his conduct.  He agrees

09:36AM    25    that the guideline range that is calculated for his offense

will be calculated as if there was a separate charge and a separate plea of guilty to each of ten additional victims. He agrees that all eleven victims in the case are entitled to all of the rights accorded to victims, including restitution.

In exchange for his guilty plea to Count 1 and his agreement with respect to the victims the government agrees to bring no additional charges against him arising out of his conduct, and if he continues to demonstrate acceptance of responsibility for his conduct to recommend that he receive credit for that acceptance of responsibility in the calculation of his sentencing guidelines.

Now, the plea agreement provides, and I am sure Mr. Salvado understands, that it is one between him and the United States, and the Court is not bound by the plea agreement or any of the recommendations in it.  And I believe he understands that following a guilty plea, if it is accepted by the Court, a presentence report will be ordered.  The district court will determine what the appropriate sentence in this case will be, and if Mr. Salvado is not satisfied with that sentence, that will not be a basis for him to withdraw his guilty plea.

I believe he understands, as is set forth in the plea agreement, that he will have a full opportunity to review the presentence report and make any objections, as will the government.  But at the end of the day the district court will

impose what it deems to be a proper sentence, and if he is not
satisfied with that sentence he will not be able to withdraw
his plea. In essence, Your Honor, that is the plea agreement in
this case.

09:37AM       THE COURT: Mr. Weitzman, is that a fair summary of
the agreement?

      MR. WEITZMAN: It is, Your Honor.

      BY THE COURT:

**Q.**    Mr. Salvado, you heard what Mr. Clancy had to say?

09:37AM   **A.**    Yes.

**Q.**    Aside from what Mr. Clancy had to say in what was set
forth in the written plea agreement, has anyone promised you
anything to get you to plead guilty?

**A.**    No.

09:38AM   **Q.**    Has anyone threatened you or any member of your family or
anyone close to you to get you to plead guilty?

**A.**    No, sir.

**Q.**    The plea agreement, as Mr. Clancy has noted, has a number
of recommendations in it, but it's important that you

09:38AM   understand that no one can guarantee what sentence Judge Rambo
will impose in this case.  Do you understand that?

**A.**    I do.

**Q.**    And that Judge Rambo, notwithstanding the recommendations
of the parties, will have to make her own judgment on what the

09:38AM   appropriate guidelines and sentence are in this case.  Do you

1  understand that?

2  **A.**   I do.

3  **Q.**   And so it's important for us to understand that if Judge

4  Rambo didn't accept any of the recommendation of the parties,

09:38AM  5  if she went above or below what they recommended, you'd still

6  be bound by this guilty plea.  Do you understand that?

7  **A.**   I do.  Thank you.

8  **Q.**   And so are you therefore pleading guilty to this offense

9  of your own free will because you in fact have committed this

09:39AM  10  offense?

11  **A.**   Yes, sir.

12  **Q.**   Now, I need to go over a couple of other matters with you,

13  if you'll just indulge me.

14  **A.**   Okay.

09:39AM  15  **Q.**   Do you understand that the charge being brought against

16  you is a felony offense?

17  **A.**   Yes.

18  **Q.**   As a result you may lose certain civil rights that I kind

19  of want to just discuss with you for a few minutes.  You could

09:39AM  20  lose the right to vote, the right to possess a firearm, the

21  right to hold certain professional licenses, the right to serve

22  on a jury, or the right to obtain certain federal benefits.

23  You recollected lose those rights by virtue of a plea.  Do you

24  understand that?

09:39AM  25  **A.**   I do.

**Q.**    And are you a United States citizen, Mr. Salvado?

**A.**    Yes, sir.

**Q.**    I'm not disputing that at all, but whenever someone comes
before me pleading guilty to a serious charge like this, I'm
obliged to note that if you were not a citizen, one consequence
of the plea is that you could be removed from the United
States.  Do you understand that?

**A.**    I do.

**Q.**    And do you understand that the penalty for this offense is
a mandatory fifteen years in prison and up to thirty years in
prison.  Do you understand that?

**A.**    I do.

**Q.**    You would face a maximum fine of up to $250,000.  Do you
understand that?

**A.**    Yes.

**Q.**    You would face a term of supervised release that would
follow any jail sentence, and I believe that term of supervised
release would have to be at least five years and could be as
long as your natural life.  Do you understand that?

**A.**    I do.

**Q.**    You'd also face the costs of prosecution, denial of
certain federal benefits, and a $100 assessment.  Do you
understand that?

**A.**    I do.

**Q.**    In addition there is a $5,000 special assessment if the

1    court finds that you have engaged in human trafficking. Do you

2    understand that?

3    **A.**    I do.

4    **Q.**    So that those assessments could total $5,100.  Do you

09:40AM  5    understand that?

6    **A.**    I do.

7    **Q.**    Beyond that there are some other consequences of your plea

8    which are set forth in the plea agreement but which I want to

9    just cover as well, and I suppose I would direct your attention

09:40AM  10    to paragraphs 26 and 27 of the plea agreement.  Federal law

11    among other things provides for mandatory restitution for

12    victims of crimes, and do you understand that as part of a

13    guilty plea in this case you may be required to make

14    restitution to crime victims?

09:41AM  15    **A.**    Yes.

16    **Q.**    In addition, as you can see in paragraphs 26 and 27, that

17    persons convicted of charges such as the one as to which you

18    are pleading guilty may be required to register as sex

19    offenders in the future.  Do you understand that?

09:41AM  20    **A.**    I do.

21    **Q.**    And do you understand that if you fail to register as a

22    sex offender you could be charged with a new criminal offense

23    and could be returned to jail?

24    **A.**    I do.

09:41AM  25    **Q.**    Furthermore, federal law provides that in certain

instances individuals who have completed a criminal sentence may be subject to civil commitment as sexually dangerous offenders.  Now, there's no way for any of us to project whether that will happen at all in your case at the completion of a sentence, but it's important as you begin this process that we all understand that that is one other possible consequence in this case.  Do you understand that?

**A.**   I do.

**Q.**   Now, I have mentioned to you this term of supervised release that has to be at least five years and could be as long as your natural life. Do you understand that's served after any period in jail?

**A.**   Yes.

**Q.**   And do you understand that if you violated supervised release you could be returned to jail?

**A.**   Yes.

**Q.**   Do you understand that there are sentencing guidelines that Judge Rambo must consider and may follow when it comes time to sentencing you?

**A.**   I do.

**Q.**   And have you and Mr. Weitzman talked about those guidelines and how they might work in your case?

**A.**   Yes.

**Q.**   I would fully expect that Mr. Weitzman would do just that for you, and let me ask you, has Mr. Weitzman or anyone

1  provided you with an estimate of what those guidelines might

2  be?

3  **A.**   No, not yet.

4  **Q.**   And let me ask you in that regard, sometimes what lawyers

09:43AM 5  will do is they'll tell you the guidelines could be X number of

6  months.

7  **A.**   Oh yeah, yeah, that's familiar, yes.

8  **Q.**   It's not like a formal written estimate.

9  **A.**   Right, yeah.

09:43AM 10  **Q.**   But the lawyer may tell you that when I do the guidelines

11  it could be --

12  **A.**   He did that, yes.

13  **Q.**   He did that?

14  **A.**   Yes.

09:43AM 15  **Q.**   And I would fully expect he'd do that, too, but there are

16  a couple of things we just need to note about the estimate you

17  received from Mr. Weitzman or any estimate you received from

18  anyone.  First, that estimate is certainly the best estimate

19  that counsel can provide, but it isn't binding on Judge Rambo.

09:43AM 20  Do you understand that?

21  **A.**   I do.

22  **Q.**   She'll have to make her own findings, and if she finds the

23  guidelines are different than any estimate you received, you'll

24  still be bound by this plea.  Do you understand that?

09:43AM 25  **A.**   Yes.

**Q.**   Furthermore, do you understand and recognize that a prior
criminal record could affect your guidelines and might make
your guidelines higher?  Do you understand that?

**A.**   I do.

09:44AM **Q.**   Now, what will happen in this case is if your plea is
accept a presentence report will be repaired.  That report will
provide a complete background on you, your social history, any
medical history and criminal history, and it will describe your
involvement in this offense.

09:44AM        That presentence report will also contain a tentative
guideline calculation.  Mr. Salvado, you will see that report
well before Judge Rambo ever does, and if there's anything that
is in that report that you think is wrong, you have a right to
object to it.  Do you understand that?

09:44AM **A.**   I do, thank you.

**Q.**   You're certainly welcome, sir.  And do you understand that
objections that can't be resolved by the parties will have to
be resolved by Judge Rambo at a hearing where typically the
government will have to prove what's in that report, do you
09:44AM understand that?

**A.**   I do.

**Q.**   Mr. Salvado, this process is set up to protect your
rights, but if at the end of the process the guidelines turn
out to be different or higher than you expected, you'd still be
09:45AM bound by this plea.  Do you understand that?

1  **A.**   I do.

2  **Q.**   Of course in no event can a sentence imposed by Judge

3  Rambo exceed the statutory maximum we've discussed here today,

4  thirty years.  Do you understand that?

09:45AM 5  **A.**   I do.

6  **Q.**   Furthermore, in no event could the sentence be less than

7  the mandatory minimum required by law. Do you understand that?

8  **A.**   I do.

9  **Q.**   And do you understand that one consequence of a conviction

09:45AM 10  is that you may be required to provide a DNA sample?

11  **A.**   I do.

12  **Q.**   Do you further understand that the guidelines that we've

13  been talking about are advisory only.  So in some instances

14  Judge Rambo could impose a sentence either above or below the

09:45AM 15  guidelines. Do you understand that?

16  **A.**   I do.

17  **Q.**   And do you understand that there are, there is no parole

18  in the federal system.  So if you're sentenced to a period of

19  time in prison, you would have to serve that time and you would

09:46AM 20  not be able to be released early on parole. Do you understand

21  that?

22  **A.**   I do.

23  **Q.**   With the information we've gone over so far is it still

24  your wish to enter a guilty plea to Count 1?

09:46AM 25  **A.**   Yes, sir.

**Q.**   And are you doing to of your own free will because you are in fact guilty of that offense?

**A.**   Yes.

**Q.**   Mr. Salvado, do you have any questions of me regarding any of the matters that we've been discussing here today?

**A.**   I do not.

**Q.**   Very well.  In Count 1 of the indictment of the indictment it is alleged that you violated Title 18 of the U.S. Code, Section 2251(a) and (e), and it is alleged that you enticed individuals to engage in sexually explicit conduct for the purpose of creating and producing visual depictions of that conduct.  I'm going to ask Mr. Clancy to tell us what the government would have proven in this case.  I'll ask you to pay close attention, because when he gets done I'm going to ask if that's what you did --

**A.**   Okay.

**Q.**   -- and then I'll ask how you plead.

**A.**   All right.

         THE COURT: Mr. Clancy?

         MR. CLANCY: Your Honor, if this matter proceeded to trial the United States would be prepared to prove that the defendant used a dating website *getvgl.com*, which I'll refer to it as VGL, and his cell phone to communicate online and via text message with an underage male for the purpose of producing child pornography. Specifically the defendant conducted

conversations via text message to request and receive images
depicting the genitalia of a minor male, in this instance
knowing that the minor male was only sixteen years old.

That victim resides in the Northern District of
Illinois and was in the Northern District of Illinois through
the duration of the conversations with the defendant.  The
defendant engaged in those text message conversations from
Franklin County, within the Middle District of Pennsylvania,
persuading and enticing that victim to send him sexually
explicit images constituting child pornography using electronic
devices shipped and transported in interstate and foreign
commerce.

On or about October 24, 2017 Victim 1 established a
profile on the dating website VGL.  VGL is a dating website
that allows a subscriber to create and customize a profile with
a unique user name.  VGL enables subscribers to browse and
message unlimited subscribers for free.  VGL allows a
subscriber to post and view unlimited public and private photos
posted by other VGL users.

In addition VGL supports a function that allows
subscribers to find Snapchat, Instagram, Kick, Facebook, and
Twitter user names for other VGL users in either the same
geographic area or nationwide. VGL can be accessed on various
electronic devices capable of accessing the internet, including
cell phones, tablets, computers, either directly through the

website or through a VGL application.

In the fall of 2017 Victim 1 was sixteen years old. On or about October 25, 2017 the defendant contacted Victim 1 on VGL using the user name B. Salvado.  At the time Victim 1 falsely stated he was eighteen years old. The defendant asked Victim 1 to send him naked pictures of himself.  Victim 1 complied with the defendant's request and sent naked pictures of himself using the VGL application.

Shortly after the initial communications on VGL the defendant gave Victim 1 his cell phone number and requested that Victim 1 and the defendant engage in communications through text message.  A review of information from Victim 1's phone revealed that in the less than one month period from about October 25, 2017 to November 14, 2017 Victim 1 and the defendant engaged in approximately 3,938 text message communications.

They exchanged via text message audio, video, and photograph files during the course of their communications. Victim 1 told the victim he lived in Illinois.  During the course of these conversations and after the defendant learned Victim 1 was true age of sixteen, the defendant offered to pay Victim 1's mother in order to marry Victim 1.

He told Victim one 1he would take care of him financially, and he offered to purchase expensive items for Victim 1, including a computer, and a house in California.

1  After that point in time from about October 29, 2017 through

2  November 13, 2017 the defendant enticed Victim 1 to take and

3  transmit through a facility of interstate commerce four

4  separate images constituting child pornography.

5        Now, as noted in the plea agreement, Your Honor,

6  there are ten additional victims of the defendant's enticement

7  and use of minors to produce child pornography.  The

8  particulars of those victims, all of which are known to the

9  defendant and Mr. Weitzman, will be included in the information

10  provided to the probation office for inclusion in the

11  presence report.

12        THE COURT: Very well.

13        BY THE COURT:

14  **Q.**  Mr. Salvado, did you hear what Mr. Clancy had to say?

15  **A.**  I did.

16  **Q.**  Is that what happened here?

17  **A.**  Yes, sir.

18  **Q.**  Is there anything about what he said that is inaccurate?

19  **A.**  No, sir.

20  **Q.**  Then based on the information I provided you here today

21  regarding your rights, the penalties for these offenses, and

22  the nature of the charges, is it still your desire to give up

23  your right to a jury trial and to plead guilty to Count 1 of

24  the indictment?

25  **A.**  Yes, sir.

**Q.**   Then with respect to Count 1, how do you plead, sir? Are
you guilty?

**A.**   Guilty.

        THE COURT: Very well. Counsel, are there any other
areas of inquiry you would ask me to make of Mr. Salvado?

        MR. CLANCY: Not from the government, Your Honor.

        MR. WEITZMAN: No, sir.

        THE COURT: Very well.  Mr. Salvado, I find, and will
recommend that Judge Rambo also find, that you are fully
competent and capable of entering an informed guilty plea, that
you are aware of the nature of the charges and the consequences
of your plea, and that your plea is a knowing and voluntary
plea that is supported by an independent basis in fact,
containing all of the elements of the offense charged against
you.

        I also find and will recommend that Judge Rambo find
that no promises have been made to you beyond those set forth
in the plea agreement and that no one has threatened you to
induce you to enter a guilty plea.  Therefore, sir, I find and
will recommend that Judge Rambo also find that your plea of
guilty should be accepted, that you should be adjudged guilty
of this offense, and that this case should proceed forward to
sentencing.  You'll recall, Mr. Salvado, I mentioned that a
presentence report will be prepared and --

        THE DEFENDANT: Correct.

                    THE COURT: -- you will see it before Judge Rambo.

Will we be able to get Mr. Salvado a copy of that report by

April 9?

                    PROBATION OFFICER: Yes, Your Honor.

09:53AM         THE COURT: Then I'm going to enter an order directing

that you get an advance copy of that report by April 9.

                    THE DEFENDANT: Thank you.

                    THE COURT: Oh, you're certainly welcome.  No problem

at all.  That's my job.  Then you and Mr. Weitzman and

09:53AM  10  government counsel will have a chance to review that report,

and if there's anything in it that's wrong you can lodge an

objection.  Okay?

                    THE DEFENDANT: Okay.

                    THE COURT: Judge Rambo will then set this case down

09:53AM  15  for sentencing sometime after that, but you'll get a separate

order from Judge Rambo to that effect.  Okay?

                    THE DEFENDANT: Thank you.

                    THE COURT: You're certainly welcome.  Mr. Clancy, is

there anything further on behalf of the United States?

09:54AM  20          MR. CLANCY: No, Your Honor, thank you.

                    THE COURT: Mr. Weitzman, is there anything further we

can do on behalf of Mr. Salvado?

                    MR. WEITZMAN: No, Your Honor.

                    THE COURT: Mr. Salvado, good luck to you, sir.

09:54AM  25          THE DEFENDANT: Thank you.

1        THE COURT: You're certainly welcome.

2        COURTROOM DEPUTY: Court is adjourned.

3        (Hearing concluded at 9:50 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL COURT REPORTER


USA vs. Brian Salvado

1:18-CR-00228-SHR/MCC

Change of Plea Hearing

13 February 2020


I, Wesley J. Armstrong, Federal Official Court Reporter, in and for the United States District Court for the Middle District of Pennsylvania, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Dated this 12th day of January 2021




/s/ Wesley J. Armstrong

_____

Wesley J. Armstrong

Registered Merit Reporter


U.S. District Court, Middle District of PA